OPINION
{¶ 1} Jared E. Walker, defendant-appellant, appeals the judgment of the Franklin County Court of Common Pleas, wherein a jury found him guilty of two counts of robbery, in violation of R.C. 2911.02, second-degree felonies, and two counts of robbery, in violation of R.C. 2911.02, third-degree felonies.
 {¶ 2} On December 7, 2001, between 7:00 and 8:00 p.m., Adam Gregory was walking from his car to his apartment when a man on a bicycle approached him and demanded money. Although he first ignored the man, the man told him that it was not a joke and held a gun to his face. Gregory gave the man his credit cards. The man rode away, and Gregory went into his apartment and called the police. Gregory filed a report, and described the man's clothing, weapon, and bicycle.
 {¶ 3} Also on December 7, 2001, at approximately 10:00 p.m., Joseph Paine was walking from a gas station, where he purchased an 18-pack of Bud Light beer, when a man approached him from behind on a bicycle. The man put a gun to his side and told Paine to give him all of his money. Paine gave the man his wallet and beer, and took a quick glance at the man. The man told him to walk away and not look back. Paine ran toward his apartment, and the man rode away in the opposite direction. As he entered his apartment, Paine took another quick glance at the man. Paine called the police from his apartment, and they took a report. He was able to describe the man's approximate height and weight, the side of his face, his hair, the coat and hat he was wearing, a heavy black coat, and a toboggan-type hat over a tighter hat, the bike, and the gun used, which had some silver on it.
 {¶ 4} Columbus Police Officer, Enoch White, was in the area in an unmarked vehicle and saw a man wearing a puffy black jacket riding a bicycle. He tried to follow the bicycle, and eventually saw the bicycle lying in an alley. The man then emerged from between two buildings with something under his jacket, picked up the bicycle, and rode away. Officer White tried to follow the man, and then eventually saw the man on foot. He then came upon another cruiser that was parked next to the bicycle. Another officer and White then began searching for the man. They found appellant lying next to a car. Near the bicycle, the police recovered a case of Bud Light beer and two weapons. Paine's wallet was found nearby. A can of Bud Light beer was found in appellant's coat pocket. The police returned to Paine's apartment and asked him if he could identify a suspect being detained. Paine was shown appellant sitting in the back of a police paddy wagon, and identified him as the man who had robbed him. A few days later, the police called Gregory to the police station, where he was shown a photograph array, but was unable to make an identification.
 {¶ 5} Appellant was indicted on two counts of aggravated robbery and four counts of robbery, all with firearm specifications. A jury trial commenced on March 14, 2002. Prior to the trial commencing, the court denied appellant's motions to suppress identification, to suppress statements, and for severance of counts. During the trial, the court also denied appellant's request to discharge counsel and motion for mistrial based upon an alleged violation of the separation order. The state did not pursue the firearm specifications because the weapon was not operable. At the close of the state's case, appellant moved for acquittal, and the state dismissed the aggravated robbery counts. The remaining four robbery counts were submitted to the jury, which returned guilty verdicts as to all of them. The trial court merged the two third-degree-felony counts with the two second-degree-felony counts, and the state elected to have sentence imposed on the two second-degree-felony counts. The court sentenced appellant to four years incarceration on both, to be served consecutively. Appellant appeals the judgment of the trial court, asserting the following four assignments of error:
 {¶ 6} "[I.] The trial court erroneously overruled defendant's pretrial motion to suppress identification.
 {¶ 7} "[II.] The court erroneously overruled appellant's motion for a mistrial.
 {¶ 8} "[III.] Appellant received ineffective assistance of counsel due to trial counsel's failure to obtain a separation of witnesses prior to the commencement of testimony at the suppression hearing, and through counsel's failure to assure his belated motion was enforced.
 {¶ 9} "[IV.] Appellant's convictions were not supported by the evidence in that the evidence was insufficient on the element of identification. Furthermore, the court erred in overruling appellant's motion for acquittal pursuant to Criminal Rule 29 and conviction was against the manifest weight of the evidence."
 {¶ 10} Appellant argues in his first assignment of error the trial court erred in denying his pretrial motion to suppress the identification of appellant by Paine. After apprehending appellant, the police returned to Paine's apartment and asked him to see if he could identify a suspect being detained. The police showed Paine a man in the back of a police paddy wagon, and Paine identified him as the man who had robbed him. Appellant argues that this "one-man show-up" was tainted with suggestiveness, rendering the eyewitness identification unreliable.
 {¶ 11} A cold stand or one-on-one show-up identification may be suggestive under certain circumstances. Nevertheless, such identification procedure is permissible unless there is a substantial likelihood of misidentification. See State v. Madison (1980), 64 Ohio St.2d 322. It is the likelihood of misidentification that violates a defendant's right to due process. Neil v. Biggers (1972), 409 U.S. 188, 198, 93 S.Ct. 375; State v. Jells (1990), 53 Ohio St.3d 22, 27. In determining the reliability of an identification pursuant to a one-on-one show-up, the trial court must consider the following factors: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation. Madison, supra, citing Neil, supra.
 {¶ 12} At the motion hearing, Paine testified on direct examination that between 10:00 and 10:30 p.m., he was walking back to his apartment after purchasing an 18-pack of Bud Light beer. He heard someone approaching from behind on a bike, and then felt a gun stuck in his side. He said when the gun was stuck in his side, he took a "quick glance back," and then a man told him to give him his money. He gave the man his wallet and beer. His wallet contained some credit cards, cash, and his identification. Paine said he got a quick look at the man. Paine testified that he noticed the man was wearing a "thicker," "darker" coat and a toboggan-looking hat covering most of his hair. He said the bicycle looked small for the man and did not fit him. It was a "darker" colored bike. The man then told him not to look back and rode away. As Paine entered his apartment to call the police, he took another quick glance at the man riding away on the bicycle.
 {¶ 13} Approximately 30 to 45 minutes after he gave a police officer a statement and description, the police came back to his house and told him that they had found somebody that "kind of fits the description" and they wanted him "to check him out." This was Paine's paraphrasing of the officer's language, because he did not remember the exact wording. The police never told him he "had to" identify anyone. He said the police took him to the back of a paddy wagon a few blocks from his apartment, shined a light in the back of the paddy wagon, and asked him if appellant was the person who robbed him. Paine told the police, "Yes, 90 percent sure." He said that if appellant had not been the person who robbed him, he would have told the police. Paine also stated that the police did not say anything to make him identify the man in the paddy wagon.
 {¶ 14} On cross-examination, Paine said that his wallet was black with an "Ohio State" logo on it, and that he had about $20 in it. He said he has no vision problems, and that there were streetlights throughout his apartment complex. Paine testified that the nearest light to the location of the incident was a big streetlight about a half-block away. After the man took his money and beer and rode away, Paine took another "glance" about five to ten seconds later as he was running into his apartment complex. Paine said he saw the man riding away on the bike from about 50 to 75 feet away. Paine said that the police arrived within about 15 to 30 minutes. He said he described the man to the police as being a black man about 6'1" or 6'2", about 170 or 180 pounds, with scruffy hair sticking out of his hat on the side. Paine told the police the man had a thick, long, dark coat on with a dark, maybe black, toboggan hat. When the police told him they had found somebody that fit the description of the robber, they did not tell him they necessarily found the man who robbed him. The officer shined his flashlight into the back of the van before asking him to identify the man, and there were also other house lights illuminating the area.
 {¶ 15} On re-direct examination, Paine testified that on the first "glance" he got of the man, he looked for two or three seconds, and on the second "glance," he looked for another two or three seconds. On the first glance, he saw the man's coat, gun, side of his face, toboggan hat, and bike. The second time he looked back, he saw the bike, the color of the man's coat, and his size relative to the bike. When he saw the man in the back of the van, he identified him by his facial features and because he had scruffy hair that was sticking out of his hat.
 {¶ 16} On re-cross examination, Paine said he told the police the gun was silver and the thickness looked like a .9mm. He had only been able to see a small portion of the barrel. When Paine saw the man in the back of the van, he had been wearing similar clothing as the man who had robbed him.
 {¶ 17} We find that Paine's identification was reliable, and there was not a substantial likelihood of misidentification. Paine had the opportunity to view appellant during the robbery and a few seconds after the robbery. There was a large streetlight a half-block away from the location of the incident. Appellant was not wearing a full mask over his face, and part of his hair was visible. Paine testified that he saw appellant twice for two to three seconds each time. Paine also provided the police with an accurate description of appellant prior to the one-on-one show-up, including a description of the man's race, height, weight, hair, hat, and clothing. He told the police he was 90 percent certain of his identification of appellant. The identification was conducted within approximately 45 minutes to an hour of the incident, while it was still reasonably fresh in Paine's memory. Under these circumstances, we find that Paine's identification of appellant was reliable based upon the factors in Neil, supra. Accordingly, the trial court did not err in denying appellant's motion to suppress, and appellant's first assignment of error is overruled.
 {¶ 18} Appellant argues in his second assignment of error the trial court erroneously denied his motion for a mistrial. Although Gregory had not been able to make an identification from a photograph array shown to him at the police station, during the questioning of Gregory in the state's case-in-chief in the Friday morning session on March 15, 2002, the state asked Gregory whether he could make an in-court identification, and he responded:
 {¶ 19} "Yes, [a]ctually the moment that gentleman stepped into the courtroom I recognized him right away, but I wasn't 100 percent sure or I wasn't as positive until yesterday when he spoke to the judge, and his voice was very familiar."
 {¶ 20} Appellant moved for a mistrial, asserting that Gregory was able to hear appellant speak because he was in the courtroom after the separation order was put on. The judge denied the motion for mistrial based on his memory of the sequence of events, including the timing of the separation order and prior in-court discussions with appellant.
 {¶ 21} A trial court may order a mistrial where some intervening error prejudicially affects the merits of the case and the substantive rights of one or both of the parties. State v. Glaros (1960),170 Ohio St. 471, 478. Due to the trial court's superior vantage, the decision to grant a mistrial rests within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of that discretion. State v. Brown (1988), 38 Ohio St.3d 305, 312.
 {¶ 22} A review of the record seems to reveal the trial court was incorrect in its memory of the order of the pertinent events with regard to this matter. Our review of the transcript reveals the following sequence. During the Thursday morning session on March 14, 2002, Paine was examined with regard to a pre-trial motion to suppress identification. After the court denied the motion to suppress identification, it proceeded to address appellant's motion to suppress a statement appellant made in the presence of the police. The state called Columbus Police Officer Tim Halbakken, who was then sworn in. After the state asked the officer's name, the trial judge interrupted and asked the prosecutor a few procedural questions. During this lull in questioning, appellant's counsel requested a separation of witnesses. The trial court ordered a separation of witnesses, and there is no indication in the record that any witnesses were still present in the courtroom after the order.
 {¶ 23} After the pre-trial motions were dispensed with, the trial resumed on Thursday afternoon, March 14, 2002. At the commencement of the afternoon session, the trial judge spoke to appellant before the jury was impaneled. He told appellant that, after meeting with the attorneys in the case and hearing some of the evidence that would be presented, he believed appellant should listen carefully to his attorney's advice regarding accepting a plea. In explaining such, the trial court drew an analogy that a person would follow a doctor's advice if that person were sick. The court then commenced impaneling a jury.
 {¶ 24} When court resumed on Friday morning, March 15, 2002, appellant's counsel informed the court, outside the presence of the jury, that appellant wished his counsel to withdraw. The parties and court also discussed another case pending before the juvenile court involving appellant. During this discussion, the trial court reiterated its analogy regarding taking a doctor's advice when one is sick. The court denied the motion to withdraw. The court then further impaneled the jury, and they were sworn in.
 {¶ 25} It was during the questioning of Gregory in the state's case-in-chief in the Friday morning session on March 15, 2002, that Gregory indicated he was now certain of his identification of appellant when he heard appellant's voice while speaking to the judge.
 {¶ 26} Soon after this testimony, the court adjourned for the weekend. On Monday morning, March 18, 2002, appellant's counsel moved for a mistrial based on his belief that Gregory had violated the separation order. At this point, there was a discussion, and the trial court permitted Gregory to be questioned outside the presence of the jury with regard to the matter. With regard to the conversation he heard while in the courtroom, Gregory stated:
 {¶ 27} "It was about taking a plea bargain, discussing the options that he had. I remember Your Honor made a comment, he gave an example of: When you go to a doctor the doctor tells you to take such medication you listen to him, correct? I remember him giving that as a description of what he was giving, an example between you and your client."
 {¶ 28} Gregory indicated that he heard Paine testify, and he thought the conversation between the judge and appellant happened after that testimony. He said he remembered being told to leave the courtroom, and, as well as he could remember, he left when he was requested to leave and did not return until he was called as a witness on Friday.
 {¶ 29} The parties and the trial court then held a discussion, during which the trial court indicated that it believed the first doctor analogy occurred before the separation order, and the second doctor analogy occurred after the separation. The trial court believed that all of the potential witnesses were present during the first analogy, and none of them were present during the second analogy. Thus, the trial court believed Gregory was referring to the first analogy, which he thought had been before the separation order was put on.
 {¶ 30} However, it appears from the record that Gregory violated the separation order by being in the courtroom after the separation order went into effect. There is no evidence that another doctor analogy took place prior to the separation order, and there is no alternative explanation given by the state as to how Gregory could have otherwise had knowledge of the analogy. However, in contravention of this apparent evidence, Gregory testified that he did not remember ever coming back into the courtroom after being told to leave until he testified during the state's case-in-chief.
 {¶ 31} On discovering a violation of a separation order, a trial court has four options: (1) striking the testimony; (2) excluding additional witnesses; (3) instructing the jury to consider separation violations; or (4) granting a motion for a mistrial. Annotation (1967) 14 ALR 3d 16. In the present case, the only relief requested by appellant's counsel was to grant a mistrial. Appellant's counsel failed to present specific evidence of the separation order violation to the trial court. Although Gregory testified that he heard appellant's voice during the doctor analogy, appellant's counsel presented no evidence as to when this analogy occurred relative to the separation order. Thus, the only evidence the trial court had to rely upon was Gregory's testimony that he did not re-enter the courtroom after the trial court put on the separation order.
 {¶ 32} Regardless, this court will not disturb an exercise of discretion unless the accused has suffered material prejudice. State v. Sage (1987), 31 Ohio St.3d 173. Appellant has not shown that he suffered any material prejudice as a result of the separation order violation. The portions of the discussion Gregory heard occurred early in the proceedings before any testimony in the case-in-chief was taken. Although Gregory heard Paine's testimony at the motion hearing, such testimony was unrelated to Gregory's identification of the suspect. Appellant presents no convincing evidence as to how Paine's testimony shaped Gregory's identification testimony. Further, the purpose of Evid. R. 615 is not to prevent the witness from observing the defendant prior to trial. There has been no persuasive showing that Gregory's testimony would have been different but for his hearing this discussion. Any questions as to the reliability of Gregory's identification could have been, and were, tested during cross-examination. On cross-examination of Gregory, appellant's counsel was able to explore Gregory's identification and was able to point out to the jury that Gregory had been unable to pick out a picture resembling the robber in a photograph array at the police station. Further, Gregory testified extensively on both direct and cross-examination with regard to the description of the perpetrator's clothing, bicycle, and physical traits, which provided strong circumstantial evidence of appellant's identity as the perpetrator, thus, undermining any prejudice claimed as a result of the separation-order violation. Also, we note that Gregory did not indicate that he could not identify appellant's photograph at the police station. He testified that he chose not to pick a photo from the lineup because he had not been "100 percent sure." Although appellant speculates that Gregory's hearing of the conversation between appellant and the court impacted his willingness to make an identification, we find the evidence unconvincing and speculative. For the foregoing reasons, the trial court's decision to deny appellant's motion for a mistrial was not an abuse of discretion. Appellant's second assignment of error is overruled.
 {¶ 33} Appellant argues in his third assignment of error that he received ineffective assistance of counsel due to trial counsel's failure to obtain a separation of witnesses prior to the commencement of testimony at the suppression hearing, and due to counsel's failure to assure his belated motion was enforced. To prevail on a claim of ineffective assistance of counsel, a defendant must show both deficient performance and resulting prejudice. Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052. To demonstrate deficiency, a defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. at 688. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. Id. The adequacy of counsel's performance is reviewed in light of all the circumstances surrounding the trial. Id. Assuming that counsel's performance was ineffective, the defendant must still show that the error had an effect on the judgment. State v. Bradley (1989), 42 Ohio St.3d 136, 142. Reversal is warranted only where the defendant demonstrates there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. Id.
 {¶ 34} We find appellant has failed to demonstrate that his trial counsel's representation was unreasonable. Trial counsel's failure to request a separation of witnesses during the pre-trial motion hearings may have been the result of his reasonable belief that Paine's testimony regarding his incident was unrelated to Gregory's incident. Further, it was not the duty of appellant's trial counsel to ensure that the state's witnesses were separated. The trial court told both parties that they would each have to monitor their own witnesses to ensure they were not in the courtroom because it did not know who the witnesses were. Likewise, appellant's counsel was not necessarily in a position to recognize all of the state's witnesses prior to their testimony. Given the trial court's directive to the parties, it was reasonable for appellant's trial counsel to believe the state would keep their witnesses separated. Appellant has failed to show that his counsel's representation fell below an objective standard of reasonableness.
 {¶ 35} In addition, we have already found that, even if Gregory violated the separation order, appellant failed to demonstrate prejudice. Therefore, appellant also cannot demonstrate prejudice with regard to his claim of ineffective assistance of counsel. Appellant cannot show that, but for the violation of the separation order, the outcome would have been different. Gregory presented extensive identification testimony based upon his memory of the perpetrator's clothing, bicycle, and physical characteristics. These descriptions were accurate when compared to the testimony of the arresting officers, who also described appellant's clothing, physical description, and various items found on or near appellant. Gregory identified a coat, hat, nylon stocking, tennis shoes, bicycle, and handgun, introduced at trial, and said they resembled the items he saw the night of the incident. This testimony provided powerful circumstantial identity evidence that the jury was well within their providence to believe. Therefore, appellant has failed to show that there is a reasonable probability that, but for his counsel's errors, the result of the proceedings would have been different. Appellant's third assignment of error is overruled.
 {¶ 36} Appellant argues in his fourth assignment of error that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence, and that the trial court erred in denying his motion for acquittal pursuant to Crim. R. 29. Specifically, appellant claims that the element of identity was not proven with respect to either incident. The test for sufficiency of the evidence was set forth in State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, wherein the Ohio Supreme Court stated: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Crim. R. 29(A) motions for acquittal also test the sufficiency of the evidence presented at trial. State v. Williams (1996), 74 Ohio St.3d 569,576; State v. Miley (1996), 114 Ohio App.3d 738. Crim. R. 29(A) requires a court to enter a judgment of acquittal when the state's evidence is insufficient to sustain a conviction. We undertake a de novo review of the trial court's decision on a Crim. R. 29(A) motion and will not reverse the trial court's judgment unless reasonable minds could only reach the conclusion that the evidence failed to prove all the elements of the crime beyond a reasonable doubt. Jenks, supra, paragraph two of the syllabus.
 {¶ 37} With regard to the incident involving Gregory, Gregory testified that while he was driving in his car, he passed the perpetrator riding a black or dark purple bike with chrome or reflective rims on big tires, and he was wearing a black jacket, dark jeans, and white tennis shoes. When he got out of his car, the man on the bicycle rode up behind him and pointed a small, silver revolver in his face and demanded money. The man was over 5'9", 180 to 200 pounds, African-American, sounded like a younger man, and was wearing black panty hose over his nose and a black puffy jacket with a silver lining. He gave the man his debit card, VISA card, gas card, and driver's license. Gregory testified that the following items presented during trial looked like the same items from the night of the incident: (1) a photograph of a purple mountain bike with thick tires and a reflector found near appellant; (2) a black jacket appellant had been wearing when he was found by police; (3) white tennis shoes appellant had been wearing; (4) a gun recovered near appellant; (5) a black nylon stocking appellant had been wearing; and (6) a hat appellant had been wearing. He also recognized appellant in the courtroom by his eyes and height. When asked to identify the perpetrator in a photograph array at the police station a few days later, Gregory could not identify appellant.
 {¶ 38} With regard to the incident involving Paine, Paine basically testified to the same events he testified to at the motion to suppress hearing. He stated that while returning home from purchasing an 18-pack of Bud Light beer at a gas station at around 10:00 p.m., a man riding a bicycle stopped and put a gun to his side. He took a quick glance at the man when he was first jabbed with the gun. He saw the man's heavy black coat, a toboggan hat, the side of his face, a dark bike, a silver gun, and hair sticking out of a hat. The man asked for his wallet and motioned for his beer, which Paine gave to him. His wallet was a black wallet with an "Ohio State" logo on it, and contained his identification, some cash, and credit cards. The man rode away on his bicycle, and Paine ran back to his apartment. Before entering the apartment, Paine took another quick look at the man. The man was about 6'1" and weighed 170 to 180 pounds. After calling the police, they came to his house, and Paine provided a description of the man. The police came back to his house later that night and asked him to go with them to see if he could identify a suspect. He went with the police, and identified appellant in the back of the paddy wagon as the person who robbed him, based upon his hair and his face. He did not know that the police had found the beer and wallet until after he had identified appellant. At trial, Paine identified the black jacket, a grayish toboggan hat, and the purple bike as being similar to the ones he saw on the night of the incident. He also identified appellant at trial. Paine further testified that although the incident occurred at night, there were streetlights and porch lights on near the scene.
 {¶ 39} Officer White was circling the area in an unmarked vehicle looking for the suspect when he saw appellant riding a bicycle. After he turned his vehicle around to follow appellant, he lost appellant but found the bike lying in an alley. He then spotted appellant emerge from between two buildings, wearing a puffy coat with something under his jacket, and ride away on the bike. Officer White pursued appellant, and eventually saw him on foot, running between a house and a building. Officer White then pulled his car around and saw another police cruiser with its lights activated in front of the bicycle. There were also some items on the ground. He and the other officer met and both began to search for appellant. Officer White then found appellant lying in the street near a car wearing a puffy black jacket. Near the bicycle, he found two weapons. He testified that appellant was wearing a skullcap, under which he had an Afro-style hairstyle. Officer White also testified that he found an 18-pack of Bud Light beer and two weapons near the bicycle. He also found Paine's wallet nearby. Officer Halbakken testified that when Paine came to the van to identify appellant, appellant was wearing the black jacket and the black nylon.
 {¶ 40} Officer Andrew Radich with the Columbus Police Department testified that he saw appellant riding his bicycle in the area of the incidents. After activating his lights, appellant jumped off the bicycle carrying an 18-pack of beer. Appellant was wearing a black toboggan hat, a nylon stocking underneath his hat, a black puffy coat, dark denim jeans, and white tennis shoes. Officer Radich exited his cruiser and began chasing appellant. He observed appellant drop the 18-pack of beer on the ground, but then lost sight of appellant around the corner of a building. After meeting up with Officer White, the two of them eventually found appellant lying on the ground. While searching the area near where appellant was found, they found Paine's black wallet with an Ohio State logo on it and Paine's identification and credit cards in it. Also near where appellant had dropped the beer, they found two guns, one revolver and one fake gun. Appellant had an unopened can of Bud Light beer in his pocket, and the 18-pack of beer had at least one can missing.
 {¶ 41} Officer Halbakken testified that when he patted appellant down before putting him in the paddy wagon, he found a single can of Bud Light beer inside appellant's coat. He also took a stocking cap and black nylon off of appellant's head. He also identified appellant's white shoes. While he and appellant were sitting in the back of the paddy wagon, appellant overheard on Officer Halbakken's walkie-talkie that they had found two guns, and appellant responded, "Aw, fuck."
 {¶ 42} We find that the testimony and evidence, when viewed in a light most favorable to the prosecution, as we are required to do in an insufficient-evidence analysis, would convince the average mind of the identity of appellant as the robber in both incidences beyond a reasonable doubt. Despite Gregory's apparent violation of the separation order, he still provided detailed identification testimony based upon his memory of the robber's jacket, shoes, gun, bicycle, height, weight, race, and hat. These descriptions were accurate when compared to the testimony of Officers White, Radich, and Halbakken, who described appellant's clothing, physical description, and various items found on or near appellant, all of which matched Gregory's description. At trial, Gregory identified all of the items found on appellant, and said they resembled the items he saw the night of the incident. Likewise, with regard to Paine, Paine also provided an accurate description of appellant and his clothing, gun, and bike, all of which matched the description of appellant as testified to by the police. Therefore, we find there was sufficient evidence of appellant's identity as the perpetrator of the crimes against Paine and Gregory.
 {¶ 43} Having addressed appellant's argument regarding sufficiency, we must turn our attention to his assertion that the convictions were against the manifest weight of the evidence. Although evidence may be sufficient to sustain a guilty verdict, the issue of manifest weight requires a different type of analysis. "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) State v. Thompkins (1997),78 Ohio St.3d 380, 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594. In making its determination on this issue, the appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id., citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Appellate courts are cautioned to sustain a manifest weight argument in exceptional cases only where the evidence "weighs heavily against the conviction." Id.
 {¶ 44} After reviewing the entire record, weighing the evidence and all reasonable inferences, we find that the jury did not clearly lose its way and create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The issue of identity came down to whether the jury found Paine and Gregory credible. "The weight to be given the evidence and the credibility of the witnesses are primarily issues to be decided by the trier of fact." State v. Burdine-Justice (1998), 125 Ohio App.3d 707, 716. The trier of fact has the benefit of seeing and hearing the witnesses testify and is in the best position to determine the facts of the case. In re Good (1997),118 Ohio App.3d 371, 377.
 {¶ 45} In the present case, the jury apparently believed the testimony of both Paine and Gregory describing appellant's physical characteristics, clothing, and gun. At trial, appellant attempted to question the reliability and consistency of various portions of Gregory and Paine's testimonies; however, Gregory and Paine adequately explained these issues. With regard to Gregory, although he admitted that he could not identify appellant in the photo array at the police station, he said that the only reason he did not want to make an identification was because he was not "100 percent" sure. He also admitted that the closest light was down the block, but said that he still could see well enough to see the characteristics of the perpetrator that night. He also testified that although he could not identify any of the items at trial with 100 percent certainty, he said they were consistent with what he remembered from that night. In addition, we have already found that there was no convincing showing that Gregory's identity testimony was rendered unreliable by his apparent violation of the separation order.
 {¶ 46} With regard to Paine, he admitted he told the police the robber had a "longer" jacket on, but the black jacket presented at trial was waist length. However, Paine explained that the jacket looked longer than waist length because the perpetrator was sitting on a bicycle and it hung down. Paine also testified that he thought the gun had been an automatic, but the gun identified at trial was a revolver. However, Paine stated that he did not see the back portion of the gun because it was covered by the robber's hand, and he only saw the barrel, from which he made his assumption that it was an automatic due to its "fullness." Also, although he told the police he was only 90 percent sure when he identified appellant in the paddy wagon, he testified that he is reluctant to say he is 100 percent certain about anything. Further, we have already found above that the identification testimony of Paine was not tainted by the one-man show-up so as to render his testimony unreliable.
 {¶ 47} Given the evidence and testimonies of Paine, Gregory, and the police officers, this is not an exceptional case in which the evidence weighs heavily against the conviction. Therefore, there was sufficient evidence of appellant's identity and appellant's conviction was not against the manifest weight of the evidence. Appellant's fourth assignment of error is overruled.
 {¶ 48} Accordingly, we overrule all four of appellant's assignments of error, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
KLATT, J., and PETREE, P.J., concur.